UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN MONTOYA PUGA,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN,<br><br>    Defendant. | Case No. 13-cv-03485-JSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 10, 21 |

Plaintiff Martin Montoya Puga brings this action pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3), seeking judicial review of a final decision by Defendant Carolyn W. Colvin, the Commissioner of the Social Security Administration ("Administration"), denying him Supplemental Security Income ("SSI"). Now pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 10) and Defendant's Cross-Motion for Summary Judgment (Dkt. No. 21). After carefully considering the parties' submissions, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

**LEGAL STANDARD**

A claimant is entitled to disability insurance benefits if he can demonstrate that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1). The ALJ conducts a five-step sequential inquiry to determine whether a claimant is entitled to benefits. 20 C.F.R. § 416.920. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity (*i.e.*, if the plaintiff is currently working); if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment or combination of impairments (*i.e.*, an

1   impairment that has a significant effect on the claimant's ability to function); if the claimant has a

2   severe impairment, the third step asks if the claimant has a condition which meets or equals the

3   conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the

4   "Listings"); if the claimant does not have such a condition, the fourth step assesses the claimant's

5   residual functional capacity ("RFC") and determines whether the claimant is still capable of

6   performing past relevant work; if the claimant is not capable of performing his past relevant work,

7   the fifth and final step asks whether the claimant can perform any other work based on the

8   claimant's residual functional capacity, age, education, and work experience. *Id.* §§ 404.1520(b)–

9   404.1520(f)(1).

## THE ADMINISTRATIVE RECORD

Plaintiff applied for SSI on November 25, 2009, when he was 26 years old. Plaintiff alleged that his disability, a psychotic disorder, began on October 15, 2008.[1] He is also obese and claims that, at the very least, his obesity exacerbates his mental impairment. Although Plaintiff has been unemployed for some time, Plaintiff previously worked as a security guard and an agricultural laborer. Plaintiff dropped out of school in the 9th grade primarily as a consequence of his drug use. Plaintiff currently lives at home with his parents.

The Administration denied Plaintiff's claims initially and again upon reconsideration. Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ Phillip C. Lyman on August 17, 2011 in San Jose, California. Plaintiff was represented at the hearing by attorney Angelina Valle. Plaintiff, Plaintiff's mother, Robert J. McDevitt, M.D., an impartial medical expert, and Darlene T. McQuary, an impartial vocational expert, all testified at the hearing. No supplemental hearing was held.

The ALJ issued his decision on September 9, 2011. The ALJ denied Plaintiff benefits after finding that Plaintiff was not disabled under the meaning of the Social Security Act (the "Act") since the amended onset date of November 25, 2009. After the Appeals Council denied review on June 6, 2013, the ALJ's decisions became the final decision of the Commissioner. Plaintiff

---

[1] Plaintiff later requested, and the ALJ granted, amendment of the disability onset date to November, 25, 2009.

2

1  subsequently brought the current action, seeking judicial review of the Administration's decision

2  pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3).

### A. The Medical Evidence

Plaintiff's psychiatric issues appear to have begun in 2004, resulting in several psychiatric hospitalizations, and at least one prison stint, up until the beginning months of 2009. Plaintiff has not been psychiatrically hospitalized since March 2009. Plaintiff's problems between 2004 and 2009 included drug use and, in particular, the use of inhalants (such as gasoline), which Plaintiff and Plaintiff's doctors believe contributed to, if not caused, Plaintiff's mental unrest. (*See, e.g.*, AR 319 ("Discharge Diagnosis" from 3/16/09 includes "Substance induced psychotic d/o with delusions"), 326 (stating that he does not see himself being able to return to work because of "all the drugs I took").) Plaintiff has been sober at least since his last hospitalization and arrest in March 2009.

Plaintiff has seen Dr. Don C. Guidroy, a psychiatrist, once a month since September 2009 until the end of 2010, and once every other month since the beginning of 2011. In an October 2010 Mental Residual Functional Capacity Questionnaire, Dr. Guiroy opined that Plaintiff suffers from a bipolar disorder, the medication for which causes drowsiness and lethargy. (AR 355.) Dr. Guiroy stated that Plaintiff has no energy and no motivation. Dr. Guiroy further opined that Plaintiff's ability to do unskilled work was restricted in many ways. For instance, Plaintiff was "unable to meet competitive standards" in the following areas (among others): remember work-like procedure; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; and ask simple questions or request assistance. "Unable to meet competitive standards" means Plaintiff "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work environment." (AR 357.) Dr. Guiroy further opined that Plaintiff had "no useful ability to function," the lowest possible category, in the following areas (among others): maintain attention for two-hour segment; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; and accept instructions and respond appropriately to criticism

from supervisors.  Dr. Guiroy also concluded that Plaintiff cannot manage his own finances.

On April 24, 2010, Plaintiff underwent a comprehensive psychiatric evaluation with Dr. James Scaramozzino.  Plaintiff told Dr. Scaramozzino that he is seeking SSI benefits because the medication he takes for his mental disorder makes him feel "burned out" and requires him to take naps "every three to four hours throughout the day."  (AR 325.)  Dr. Scaramozzino noted that Plaintiff's appearance and demeanor were appropriate, his behavior cooperative, and his attitude pleasant.  Regarding intellectual functioning, Dr. Scaramozzino concluded that Plaintiff's "global capacity to act purposefully, to think rationally, and to deal effectively with her [sic] environment is moderately to markedly impaired primarily as a consequence of over eight years of consistent drug abuse."  (AR 328.)  Dr. Scaramozzino further concluded that Plaintiff's ability to demonstrate practical knowledge and common sense was not significantly impaired.  He found Plaintiff's concentration adequate and his abstract thinking was within normal limits.  Dr. Scaramozzino also concluded that Plaintiff's symptom severity to be in the moderate range.  He further stated that Plaintiff has "no motivation" to develop any kind of stress-coping skills or improve his ability to generate a regular source of income.

Dr. Scaramozzino found Plaintiff's functioning in the following areas to not be significantly impaired: ability to understand and remember detailed instructions; ability to maintain concentration and attention; ability to sustain an ordinary work routine without special supervision; ability to interact with coworkers; daily activities; and social functioning.  Dr. Scaramozzino, however, concluded that Plaintiff's functioning was moderately to markedly impaired in his ability to accept instructions from a supervisor and respond appropriately, ability to complete a normal workday and workweek without interruptions, and ability to deal with various changes in the workplace.  Dr. Scaramozzino reasoned that Plaintiff's functioning was so impaired because Plaintiff lacks work skills, stress-coping skills, motivation, and experiences negative side effects of his medication.  Dr. Scaramozzino also found that Plaintiff was capable of managing his own finances.

Plaintiff's friend, Jesus Chavez, submitted a Third Party Function Report wherein he stated that Plaintiff spends his days "walk[ing] around town and talk[ing] to random acquaintances,

4

1   maintain[ing] active all day, then goes home." (AR 211.) Chavez further stated that Plaintiff is
2   able to "take care of basic cleaning around the house," shop, go out alone, go to church three times
3   a week, pay bills, handle a savings account, but has a hard time reading and writing. (AR 213-14.)
4   Chavez noted that while Plaintiff "can't always get out of bed in order to start his day," if he does
5   get out of bed, he will be social and spend time with people. (AR 215.) According to Chavez,
6   Plaintiff can pay attention "for hours," finishes what he starts, is "fair" at handling stress, and is
7   "good" with handling changes to his routine. (AR 216-17.)

### B. ALJ Hearing Testimony

Independent medical expert Dr. Robert J. McDevitt testified, based on a review of the record, that Plaintiff suffers from a psychotic disorder that is controlled with medications and treatment. (AR 77-78.) Dr. McDevitt further opined that Plaintiff's medication regime was fairly light given Plaintiff's diagnoses and behavioral history. (AR 76-77.)

Plaintiff's testimony included information regarding pain he feels in his feet, which Plaintiff believes is a side-effect from his medication. He testified that the pain makes him tired and not want to get out of bed. (AR 85.) Plaintiff, however, also testified that once he changed medications, the new medication was "much better" because it allowed him to "function and do normal things." (AR 89.)

Plaintiff's mother, Marie Puga, also testified. She stated that Plaintiff helps her around the house a few times a month; specifically, he fixes bicycles, washes dishes, sweeps, and mops. She further testified that Plaintiff "just sits home in his room," though he sometimes "goes out." (AR 96.)

Finally, Darlene T. McQuary, a vocational expert, testified. The ALJ presented two hypotheticals to Ms. McQuary. The first hypothetical was based on an individual with some physical limitations and mental limitation that were derived "largely" from Dr. Guiroy. (AR 99.) The ALJ asked if this hypothetical individual could perform any work and Ms. McQuary responded that he could not. The second hypothetical individual had the same physical limitations as the first, but the ALJ reduced the mental limitations. The ALJ asked if this hypothetical individual could perform any work and Ms. McQuary responded that he could perform Plaintiff's

5

past work as a security guard as well as other light work.

### C. The ALJ's Opinion

After conducting a hearing and considering the testimony and evidence, the ALJ followed the Act's five-step sequential evaluation process for determining disability. *See* 20 C.F.R. § 404.1520(a). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 25, 2009, the amended onset date. (AR 23.)

Second, the ALJ found that Plaintiff suffered from a severe psychotic disorder. (*Id.*) The ALJ determined that Plaintiff's psychotic disorder significantly affected Plaintiff's ability to perform basic work activities. (*Id.*) The ALJ also noted Plaintiff's weight (300 pounds), height (5'11"), and body mass index ("BMI") of 41.8. (*Id.*) The ALJ recognized that Plaintiff's BMI placed him over the obesity threshold. (*Id.*) The ALJ, however, found that Plaintiff's obesity was not a severe impairment within the meaning of the Administration's regulations because it did not exacerbate his psychotic disorder or increase his symptoms. (*Id.*)

Third, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*) The ALJ reached this conclusion after considering whether Plaintiff satisfied the Act's "paragraph B" criteria, or whether Plaintiff's mental impairment resulted in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (AR 24.) The ALJ determined that Plaintiff's activities of daily living were only mildly restricted because he had "the ability to perform light household chores, shop, prepare simple meals, maintain his living area, care appropriately for his grooming and hygiene, and assist in the care of his brother." (*Id.*) Additionally, the ALJ found that Plaintiff had only mild difficulties with respect to social functioning. (*Id.*) In support, the ALJ highlighted that Plaintiff had "the ability to interact independently, appropriately, effectively, and on a sustained basis with other individuals" as well as "the ability to get along with others, such as family members, friends, and members of his church." (*Id.*) The ALJ did note, however, that Plaintiff's social functioning was

1    impaired by "a history of altercations, avoidance of interpersonal relationships, or social

2    isolation." (*Id*.)

3          With respect to concentration, the ALJ concluded that Plaintiff has moderate difficulties.

4    The ALJ reasoned that while Plaintiff is able "to sustain focused attention and concentration

5    sufficiently long enough to permit the timely and appropriate completion of simple routine tasks,"

6    Plaintiff's concentration is limited as a result of his medications and possibly his prior

7    drug/inhalant use. (*Id*.) Plaintiff's reported daytime fatigue, in particular, is a side effect of his

8    medication that inhibits his ability to maintain persistence or pace. Nonetheless, the ALJ

9    concluded that "clinical examination or psychological testing shows the claimant does not have

10   significant limitations in this area." (*Id*.) Lastly, the ALJ determined that Plaintiff did not

11   experience any episodes of decompensation, "which have been of extended duration." (*Id*.)

12         The ALJ also considered whether Plaintiff satisfied the Act's "paragraph C" criteria. (AR

13   25.) The ALJ determined that there was "no evidence of a residual disease process that results in

14   the requisite marginal adjustment inabilities . . . [and] no evidence of a one or more years inability

15   to function outside a highly supportive living arrangement . . . [and] no evidence of a complete

16   inability to function independently outside of the area of one's home." Accordingly, the ALJ held

17   that Plaintiff's impairment did not meet or medically equal the severity of one of the listed

18   impairments in the Act because Plaintiff's mental impairment failed to satisfy both the "paragraph

19   B" and "paragraph C" criteria. (*Id*.)

20         Fourth, the ALJ concluded that Plaintiff:

21   
> has the RFC to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: the claimant can frequently climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can frequently balance, stoop, crouch and kneel; he can occasionally crawl; he can frequently perform bilateral manipulative tasks; he can never work at heights; he can perform simple routine tasks; his ability to remember and understand detailed instructions is moderately limited; he can make simple judgments in the work environment; his ability to interact with the public is moderately limited; his ability to interact with supervisors and co-workers is slightly limited; and his ability to respond appropriately to work pressures and changes is slightly limited.

28   (*Id*.) The ALJ determined that while Plaintiff's "medically determinable impairment could

reasonably be expected to cause the alleged symptoms," the ALJ relied on Plaintiff's own testimony and that of others to conclude that Plaintiff's statements regarding the "intensity, persistence and limiting effects of [his] symptoms" were not credible. (AR 27.)

The ALJ reasoned that Plaintiff's statements regarding the severity of his symptoms are inconsistent with his daily activities, which include performing light household chores, regularly going to church, playing baseball, riding bikes, and spending time with friends and random acquaintances on a regular basis. The ALJ further reasoned that Plaintiff's allegations are inconsistent with the "conservative" treatment for his symptoms since the alleged onset date. (*Id.*) Specifically, "[h]is treatment consists of low dosages of medications and monthly psychiatric counseling sessions. However, he has never been referred to or sought out additional counseling, further diagnostic testing, or additional medication management." (*Id.*) Thus, the ALJ found Plaintiff's allegations as to the intensity, duration, and functionally limiting effects of his impairments not fully credible.

The ALJ further concluded that Chavez's statement showed that Plaintiff has "minimal restrictions" in his activities of daily living and ability to get along with others. (AR 27.) Chavez's comment that Plaintiff can concentrate "for hours" also demonstrates Plaintiff's ability to maintain concentration when engaged. And although Chavez noted that Plaintiff has "incredible mood swings," the ALJ did not find this statement fully credible since "there are no specific examples of how these mood swings, their duration, intensity and frequency interfere with his ability to perform activities." (*Id.*)

The ALJ found that Ms. Puga's testimony showed that Plaintiff has the ability to perform daily activities. Further, the ALJ concluded that Ms. Puga's testimony did not support Plaintiff's allegations regarding the intensity of his impairment since Ms. Puga did not testify to "any specific instances, the frequency of, or the intensity of his alleged symptoms and how they affect his activities." (AR 28.) The ALJ also found that Ms. Puga's testimony relied in large part on Plaintiff's subjective complaints rather than personal observation.

The ALJ next considered Dr. Guiroy's opinions, which he gave minimal weight. (AR 29.) The ALJ concluded that Guiroy's opinions were inconsistent with the treatment records and the

8

level of treatment Plaintiff was receiving; namely, Guiroy was treating patient on only a monthly basis, and, in 2011, on an every-other-month basis. The ALJ further noted that in Plaintiff's recent sessions with Guiroy, Plaintiff was consistently taking his medications, and had "demonstrated insight into his past [drug] use . . . and how that use ha[s] affected his health and well-being." (*Id.*) Earlier in his treatment, Plaintiff had demonstrated periods of noncompliance with regards to his medication, which led to mood swings. The ALJ further reasoned that Guiroy's opinions concerning Plaintiff's inability to work were inconsistent with third-party statements that Plaintiff's daily activities were unaffected by his fatigue or mood. The ALJ also found that Guiroy's opinions were contrary to the results of cognitive testing performed by Dr. Scaramozzino.

The ALJ gave Dr. Scaramozzino's report great weight. (AR 30.) The ALJ found that Scaramozzino's opinions were consistent with the evidence and with the ALJ's own observations of Plaintiff's demeanor at the hearing, which the ALJ determined to be pleasant and cooperative. (*Id.*) The ALJ concluded, however, that Scaramozzino's opinion with respect to Plaintiff's ability to complete a normal workday and workweek without interruption was inconsistent with the evidence. (*Id.*) The ALJ reasoned that Scaramozzino was not privy to Plaintiff's more recent medical records, which showed improvement and a reduced need for treatment. (*Id.*)

The ALJ also considered Dr. McDevitt's testimony and gave it substantial weight. (*Id.*) The ALJ determined that McDevitt's opinion was consistent with the fact that Plaintiff had not had any psychotic episodes since his treatment began, and that Plaintiff's mood swings and anxiety appeared to be related to his non-compliance with medications and therapy treatment. (*Id.*)

Fifth, the ALJ concluded that Plaintiff is able to perform past relevant work, as well as other work available in the national economy. (AR 31.) Specifically, the ALJ determined that, based on the vocational expert's testimony, Plaintiff could perform work as a security guard, agricultural sorter and grader, and cashier/clerk, but not as an agricultural laborer because of postural limitations. (AR 31 – 32.) The ALJ accordingly concluded that a finding of "not disabled" was appropriate.

**STANDARD OF REVIEW**

The Court has authority to review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. Section 405(g). The Court may overturn a decision to deny benefits only if it is not supported by substantial evidence, or if the decision is based on legal error. *See Andrews,* 53 F.3d at 1039; *Magallenes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews,* 53 F.3d at 1039. In determining whether substantial evidence exists, the Court must examine the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Id.*

Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the Commissioner. *See id.*; *Magallenes,* 881 F.2d at 750. "The ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir. 1984) (internal citations omitted); *see Batson v. Commissioner,* 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). "The court may not engage in second-guessing." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted). "It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the Commissioner's determination as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence." *Bertrand v. Astrue*, 2009 WL 3112321, at *4 (E.D. Cal. Sept. 23, 2009).

**DISCUSSION**

Plaintiff raises three main issues on appeal to this Court: (1) whether the ALJ denied him his right to due process by failing to provide written reasons for denying Plaintiff's motion to reopen a previous application; (2) whether the ALJ failed to give proper weight to Guiroy's opinion; and (3) whether the ALJ erred in concluding that Plaintiff's obesity is not a severe impairment.

### A. Plaintiff's Due Process Rights Were Not Violated

Plaintiff contends that the ALJ's "failure to provide an explanation for his refusal to reopen [Plaintiff's] prior claim in the Decision constituted a violation of [Plaintiff's] right to due process." (Dkt. No. 10 at 7.) Plaintiff's prior claim at issue is his claim filed on February 2, 2008 that was denied on May 23, 2008. Plaintiff neither filed a request for reconsideration of the denial nor sought to reopen the claim prior to the August 2011 ALJ hearing. The parties agree that the "governing" (Dkt. No. 22 at 2) regulation at issue for reopening the previous claim is 20 C.F.R. § 416.1488. That regulation provides that a determination "may be" reopened at "any time" if "it was obtained by fraud or similar fault." 20 C.F.R. § 416.1488(c).[2] In deciding whether a determination or decision was obtained by fraud or similar fault, "we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time." *Id.*

At the hearing in front of the ALJ, Plaintiff moved to reopen the 2008 application for the first time.[3] (AR 61.) Although Plaintiff's counsel stated at the hearing that the previous application was denied in May 2008, neither Plaintiff nor the ALJ could locate the application itself in the record. The ALJ expressed some doubt that he could rule on Plaintiff's request since he was not entirely sure a previous application actually existed, and, if one did exist, when it was denied. (AR 103.) In addition, neither the ALJ nor Plaintiff could recall exactly what standard applied for reopening claims that have been closed for longer than two years. Nonetheless, the ALJ, assuming that an earlier application existed and that it was denied in 2007 or 2008, concluded that he was "not going to reopen it" because he did not "have an application to look at" and because there was no evidence in the record as to why Plaintiff did not move to timely reopen. (AR 106.) On the latter point, Plaintiff was asked directly by his counsel why he did not appeal

---

[2] The regulation provides a lower bar—"good cause"—for reopening cases that have been closed for less than two years. 20 C.F.R. § 416.1488(b). However, that lower standard does not apply to Plaintiff's previous claim because at the time of the ALJ hearing, Plaintiff's previous claim had been closed for over two years.
[3] In light of Plaintiff's nearly simultaneous request to amend the alleged onset date *forward* from October 2008 to November 2009 (AR 75-76), it is unclear why Plaintiff was seeking to reopen the 2008 application.

11

the earlier application and Plaintiff responded, "I don't remember that one." (AR 105.) Although the ALJ stated that he was not going to reopen the application, at the very end of the hearing the ALJ stated that he would look up the governing regulation, ask his staff to try to locate the previous application, and that then he would "make a decision on that." (AR 110.) The ALJ's opinion, however, does not reference Plaintiff's motion to reopen.

The Ninth Circuit has held that to satisfy due process an ALJ must generally provide "some explanation" when she rejects a claimant's proffered reason for an untimely request for administrative review. *Dexter v. Colvin*, 731 F.3d 977, 981 (9th Cir. 2013). Plaintiff argues that the case should be remanded because the ALJ failed to provide his reasons for denying his request to reopen in his written decision. The Court is not persuaded. As an initial matter, the Court notes that Plaintiff does not argue that the ALJ failed to rule on Plaintiff's request to reopen; rather, Plaintiff asserts that the ALJ *denied* his request without a reason documented in the ALJ's opinion. Thus, the Court does not interpret the ALJ's closing remarks at the hearing—"I'll ask the staff to see if they can find it and then I'll make a decision on that" (AR 110)—as vacating his earlier oral ruling that he was "not going to reopen it" (AR 106). Turning to Plaintiff's argument, Plaintiff cites no authority for the proposition that the ALJ violates due process when he provides only an oral explanation for his ruling. Further, the ALJ provided an oral explanation that satisfied due process—namely, that he was denying the request to reopen because there was no evidence in the record supporting any reason to reopen. Although Plaintiff's attorney *argued* that Plaintiff did not timely appeal because "he has a severe mental impairment and his parents don't speak English" (AR 105), there was no *evidence* supporting the contention. Rather, Plaintiff testified that he had no memory of the earlier application, including why he did not appeal it. Moreover, Plaintiff identifies no evidence—let alone argument—regarding whether the earlier determination was "obtained by fraud or similar fault," which is required to open a case, like Plaintiff's 2008 application, that has been closed longer than two years. 20 C.F.R. § 416.1488(c). Plaintiff's vague contention that he cannot "prove fault without access to the relevant documents" (Dkt. No. 22 at 2) ignores his burden to justify his delay and gather the necessary evidence in support. Even if the ALJ was not entirely sure of the proper standard to apply to Plaintiff's

12

1    request to reopen, the ALJ's rationale for the denial—that there was no evidence in the record

2    explaining the delay—was germane to any standard for justifying a lengthy delay under the

3    regulations.

4    **B.    The ALJ's Decision to Give Dr. Guiroy's Opinion Minimal Weight was Proper**

5    Plaintiff argues that the ALJ failed to give proper weight to the opinion of Plaintiff's

6    treating psychiatrist, Dr. Guiroy. Social Security regulations provide that treating sources be

7    given controlling weight when they are "well-supported by medically acceptable clinical and

8    laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in

9    [the] case record." 20 C.F.R. § 404.1527(c)(2). "The rationale for giving greater weight to a

10   treating physician's opinion is that he is employed to cure and has a greater opportunity to know

11   and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)

12   (citations omitted).

13   If a treating physician's opinion is not given "controlling weight" because it is not "well-

14   supported" or because it is inconsistent with other substantial evidence in the record, the

15   Administration considers specified factors in determining the weight it will be given. *See* 20

16   C.F.R. § 404.1527(c); *see also Orn v. Astrue*, 495 F.3d 625, 632–33 (9th Cir. 2007). Those factors

17   include the "[l]ength of the treatment relationship and the frequency of examination" by the

18   treating physician; and the "nature and extent of the treatment relationship" between the patient

19   and the treating physician. 20 C.F.R. § 404.1527(c)(2)(i)–(ii). Additional factors relevant to

20   evaluating any medical opinion, not limited to the opinion of the treating physician, include the

21   amount of relevant evidence that supports the opinion and the quality of the explanation provided;

22   the consistency of the medical opinion with the record as a whole; the specialty of the physician

23   providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of

24   the Administration's "disability programs and their evidentiary requirements" and the degree of

25   his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)–(6). "Even if

26   the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion

27   without providing specific and legitimate reasons supported by substantial evidence in the record."

28   *Orn*, 495 F.3d at 633 (internal quotations marks omitted).

13

1    The ALJ reasons for not giving Guiroy's opinion controlling weight were supported by
2  substantial evidence. Specifically, the ALJ concluded that Guiroy's opinions in the 2010 Mental
3  Residual Functional Capacity Questionnaire were inconsistent with: 1) Plaintiff's treatment
4  records with Guiroy; 2) third-party statements concerning Plaintiff's daily activities; and 3) the
5  results of a comprehensive psychological examination performed by Scaramozzino. (AR 29.)
6    Plaintiff argues that the "ALJ's description of the th[e] treatment notes is inconsistent with
7  the treatment notes themselves and the context: repeated hospitalizations; living in his mother's
8  home at age 30; unable to hold a job; etc.; in which those notes were made." (Dkt. No. 22 at 4.)
9  Plaintiff, however, fails to explain why the ALJ's description of the treatment notes was incorrect.
10 Plaintiff's bald argument ignores the ALJ's observations that Plaintiff's treatment with Guiory in
11 2011—after Guiroy provided his opinion in the 2010 questionnaire—decreased from seeing
12 Guiroy once a month to every other month. The ALJ further noted that the treatment notes in
13 2011 indicated that Plaintiff was gaining insight into his past behavior and how his drug use
14 affected his health. The ALJ also observed that the recent treatment notes showed that Plaintiff
15 was taking his medications consistently, whereas Plaintiff would previously go stretches without
16 taking his medications, causing episodes of mood swings. Because Plaintiff's conclusory
17 argument fails to identify what about the ALJ's reading of the treatment records is deficient, the
18 Court is not persuaded that the ALJ erred in finding that the 2011 treatment notes were
19 inconsistent with Guiroy's 2010 opinion. Further, the Court is not persuaded that the ALJ's
20 description of the treatment notes is inconsistent with the "context" in which they were made.
21 That Plaintiff was hospitalized in 2008 and 2009 does not change that Plaintiff was seeing Guiroy
22 on a reduced basis in 2011. The ALJ's determination that Plaintiff's reduced treatment in 2011
23 was inconsistent with Guiroy's 2010 checklist opinion that Plaintiff was totally unable to work is
24 supported by substantial evidence and therefore must be upheld, even if the evidence could
25 support an inference more favorable to Plaintiff. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th
26 Cir. 2005); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the
27 evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's
28 findings if they are supported by inferences reasonably drawn from the record").

14

Second, the ALJ determined that Guiroy's opinion was inconsistent with Plaintiff's daily activities. The evidence before the ALJ demonstrated that Plaintiff is able to socialize with friends, acquaintances, and members of his church group. Plaintiff attends church three times a week, regularly rides his bike, and plays baseball with his friends. Plaintiff's friend, Mr. Chavez, who is with Plaintiff during many of his social activities, stated that Plaintiff can pay attention "for hours," finishes what he starts, is "fair" at handling stress, and is "good" with handling changes to his routine. (AR 216-17.) Substantial evidence in the record also showed that Plaintiff has the ability to do household chores, maintain his finances, cook his own meals, and manage his medications. While Plaintiff argues that his medications cause tiredness and fatigue, substantial evidence in the record supports the ALJ's conclusion that Plaintiff is able to engage in the above daily activities largely unaffected by fatigue or his mood. Further, recent treatment records show that Plaintiff's medication continues to be calibrated to treat these reported negative side effects. (AR 364, 366, 368.) The ALJ's determination that Plaintiff's daily activities are at odds with Guiroy's check-off evaluation form—where Guiroy opines, among other things, that Plaintiff has "no useful ability" to maintain attention for a two-hour segment in an unskilled work environment (AR 357)—is supported by substantial evidence and is therefore upheld.

Finally, the ALJ concluded that Guiroy's opinion was contradicted by the opinion of Dr. Scaramozzino, the examining psychologist. "[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence." *Orn*, 495 F.3d at 632. Scaramozzino performed a comprehensive psychological evaluation on Plaintiff. Based on that evaluation, Scaramozzino found Plaintiff's functioning in the following areas to not be significantly impaired: ability to understand and remember detailed instructions; ability to maintain concentration and attention; ability to sustain an ordinary work routine without special supervision; ability to interact with coworkers; daily activities; social functioning; and ability to manage his finances. Although Scaramozzino also concluded that Plaintiff is moderately to markedly impaired in some areas due to his lack of motivation and the negative side effects from his medication, Plaintiff does not argue that Scaramozzino's opinion is consistent with Guiroy's opinion; rather, Plaintiff asserts that the ALJ's

15

reliance on Scaramozzino's opinion is flawed because the ALJ referred to "cognitive testing" performed by Scaramozzino that was not actually done. The Court is not persuaded. Even assuming that Scaramozzino did not perform formal cognitive tests on Plaintiff, it is undisputed that Scaramozzino performed a comprehensive psychological evaluation that included tests to measure Plaintiff's "Intellectual Functioning/Sensorium." (AR 328.) The ALJ's passing reference to Scaramozzino's testing as "cognitive" does not change the results of Scaramozzino's tests and his ultimate opinions. In other words, even if the ALJ mislabeled the type of testing conducted on Plaintiff, Scaramozzino's opinions still largely conflict with Guiroy's findings.

Plaintiff also challenges the ALJ's determination that Guiroy's opinions are entitled to only "minimal weight." Plaintiff contends that the ALJ failed to properly explain this reduction of weight because the ALJ "failed to even mention the weighing factors" set out in the governing regulations." (Dkt. No. 22 at 4.) The Court is not persuaded. Plaintiff ignores that the factors the ALJ is to consider include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(c)(2)(i)–(ii). As discussed above, the ALJ explained that Guiroy's opinions were given reduced weight because they were inconsistent with decreased treatment. Thus, although the ALJ did not explicitly cite the relevant factors, he plainly considered the nature and frequency of the treatment relationship, which is what the regulations require. Further, the ALJ's finding that Plaintiff's daily activities are at odds with Guiroy's opinions goes to the "consistency" factor provided in the regulations. 20 C.F.R. § 404.1527(c)(3) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Plaintiff cites no authority for the proposition that the ALJ's opinion must recite a checklist of all the factors in Section 404.1527(c). The ALJ's decision to give Guiroy's opinion only minimal weight was adequately explained and based on consideration of the relevant factors; it must therefore be upheld.

**C.    The ALJ's Analysis of Plaintiff's Obesity at Step Two Did Not Constitute Legal Error**

Step two serves as a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is to determine whether the

16

claimant has a "medically severe impairment or combination of impairments." *Id.* Plaintiff challenges the ALJ's finding that Plaintiff's obesity does not constitute a severe impairment at step two. Specifically, Plaintiff argues that the ALJ should have considered Plaintiff's obesity as an impairment in and of itself, rather than simply consider it in combination with his mental impairment. Even if the ALJ failed to include obesity as a severe impairment at step two, however, that error was harmless because the ALJ included postural limitations in the RFC, and Plaintiff fails to identify any further limitations that result from his obesity. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff contends that the record supports his need for additional limitations due to his obesity, noting that he "gets tired and sleeps at work," (AR 368) and even "dozed off" (AR 372) during a medical examination. Plaintiff, however, omits that he blamed his lethargy on *medication*, not his obesity. *See* (AR 368 ("[Plaintiff] gets tired and sleeps at work (*blamed it on the medication*)."), 372 ("[Plaintiff] stated he is tired and that he could go back to sleep; *blames medication for it*.") (emphasis added).) Plaintiff has the burden of demonstrating that he suffers from a disability. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). Plaintiff fails to provide any citation to the record that demonstrates that his obesity, and not his medication or mood and personality disorders, limited his functioning. Accordingly, the ALJ's analysis with respect to Plaintiff's obesity did not constitute legal error.

### D. Remaining Issues

Plaintiff's motion, in passing, raises several issues that the Court will address briefly. First, in a footnote, Plaintiff asserts that "The ALJ's rejection of Mr. Puga's testimony is also erroneous. That testimony was consistent with his statements to treating professionals. The descriptions of his daily activities in the record are also consistent with his testimony. The testimony also shows his confusion and flawed reality testing." (Dkt. No. 10 at 8.) Plaintiff fails to identify what portions of his testimony were rejected, for what erroneous reason, and why it matters. Indeed, it does not appear that the ALJ rejected any of Plaintiff's testimony, which is mostly unremarkable. Plaintiff's testimony included information regarding pain he feels in his feet, which Plaintiff believes is a side-effect from his medication. He testified that the pain makes

17

him tired and not want to get out of bed. (AR 85.) Plaintiff, however, also testified that once he changed medications, the new medication was "much better" because it allowed him to "function and do normal things." (AR 89.) This testimony is cumulative of other evidence in the record discussed elsewhere in the ALJ's opinion. Because Plaintiff fails to particularly identify any error, the Court declines to overturn the ALJ's decision based on the supposed adverse credibility finding.

Second, included in Plaintiff's discussion of the ALJ's determination concerning Guiroy, Plaintiff challenges the ALJ's ruling at step 3 that Plaintiff does not satisfy the subsection "C" criteria under 12.03 of the Listings. (*See* Dkt. No. 10 at 10.) That subsection provides:

> Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03(C). Plaintiff's argument that he experienced repeated episodes of decompensation—*i.e.*, he was psychiatrically hospitalized—ignores the ALJ's finding that these episodes were not "each of extended duration." Further, while Plaintiff continues to take medication with some side effects, Plaintiff fails to explain why that qualifies him as having a "residual diseased process" that results in decompensation upon a minimal increase in mental demand or change in environment. Finally, the Court is not persuaded that Plaintiff's residency at his parents' house establishes that he has an "inability to function outside a highly supportive living arrangement." The ALJ's finding that Plaintiff does not qualify at step three under the category "C" listing is supported by substantial evidence is accordingly upheld.

Finally, Plaintiff baldy asserts that "[t]here is no evidence in the record to support the

1  ALJ's RFC." (Dkt. No. 10 at 9.) Plaintiff's conclusory assertion fails to identify which specific
2  limitations the ALJ's RFC allegedly failed to include. Plaintiff cannot simply declare that the
3  RFC is inadequate without specifically identifying why it is so. Because Plaintiff fails to explain
4  why the ALJ's RFC is lacking or is inconsistent with the accepted opinions of Plaintiff's
5  examining and non-examining doctors, the Court rejects Plaintiff's conclusory assertion that the
6  RFC is not supported by substantial evidence.

7  To the extent Plaintiff argues that the RFC is flawed because the "ALJ claims to give great
8  weight to [Scaramozzino], but adopts an entirely different RFC" (*id.*), the Court is not persuaded.
9  While the ALJ's RFC is not identical to the limitations identified by Scaramozzino (*see* AR 30
10 (concluding that some of Scaramozzino's identified limitations "are more restrictive than what is
11 shown in the evidence")), Plaintiff ignores that other substantial evidence in the record supports
12 the ALJ's RFC; namely, Plaintiff's daily activities and reduced treatment with Guiroy. Further,
13 the ALJ's explanation for his decision to not adopt Scaramozzino's more restrictive limitations—
14 "Dr. Scaramozzino did not have the benefit of reviewing the more recent treatment records which
15 show improvement, insight, and a reduced need for treatment" (*id.*)—is a clear and convincing
16 reason supported by substantial evidence for the same reasons discussed above in regards to
17 Guiroy's opinions. Plaintiff does not make a non-conclusory argument to the contrary.

## CONCLUSION

19 For the reasons explained above, Plaintiff's motion for summary judgment is DENIED and
20 Defendant's cross-motion for summary judgment is GRANTED. Judgment will be entered in
21 Defendant's favor and against Plaintiff.

22 **IT IS SO ORDERED.**

23 Dated: May 30, 2014

    _____
    JACQUELINE SCOTT CORLEY
    United States Magistrate Judge